UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ADAM RICHARD NAGLER,<br><br>              Plaintiff,<br><br>        v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>            Defendant. | Case No. CV 17-05216-JDE<br><br>MEMORANDUM OPINION AND<br>ORDER |

Plaintiff Adam Richard Nagler ("Plaintiff") filed a Complaint on July 14, 2017, seeking review of the Commissioner's denial of his application for disability insurance benefits ("DIB"). The parties filed consents to proceed before the undersigned Magistrate Judge. In accordance with the Court's Order Re: Procedures in Social Security Appeal, the parties filed a Joint Stipulation ("Jt. Stip.") on March 22, 2018, addressing their respective positions. The Court has taken the Joint Stipulation under submission without oral argument and as such, this matter now is ready for decision.

/ / /

/ / /

# I.

## BACKGROUND

On December 5, 2012, Plaintiff applied for DIB, alleging disability beginning May 18, 2009. (Administrative Record ["AR"] 17, 189-90.) After his application was denied initially (AR 105-09) and on reconsideration (AR 111-15), Plaintiff requested an administrative hearing, which was held on September 28, 2015. (AR 35, 116-17.) Plaintiff, represented by counsel, appeared and testified at the hearing before an Administrative Law Judge ("ALJ"), as did two medical experts, Dr. Harvey Alpern, M.D. ("Dr. Alpern"), misidentified in the hearing transcript as Dr. Halperin, and Psychologist Ken Griffin ("Dr. Griffin"), and vocational expert, Gregory Jones. (AR 35-73.)

On October 26, 2015, the ALJ issued a written decision finding Plaintiff was not disabled. (AR 14-28.) The ALJ found that Plaintiff had not engaged in substantial gainful activity from May 18, 2009, the alleged onset date, through the date last insured of December 31, 2014. (AR 19.) The ALJ determined that Plaintiff suffered from the following severe impairments: history of left shoulder surgery with complications; left carpal tunnel syndrome; hypertension; and obesity. (Id.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 21-22.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations: Plaintiff could (1) stand and walk a total of four hours in an eight hour workday; (2) only occasionally push and pull with the left upper extremity; (3) never climb ladders, ropes, or scaffolds; (4) only occasionally reach overhead with the left upper extremity; and (5) only occasionally grasp with the left upper extremity. (AR 22.) The ALJ further found that Plaintiff's RFC precluded him from performing any past relevant work, but considering

his age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. (AR 26-28.) Accordingly, the ALJ concluded that Plaintiff was not under a "disability," as defined in the Social Security Act. (AR 28.)

Plaintiff filed a request with the Appeals Council for review of the ALJ's decision. (AR 187, 334-36.) On May 17, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (AR 1-6.) This action followed.

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). However, a

court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007).

Lastly, even when the ALJ commits legal error, the Court upholds the decision where that error is harmless. <u>Molina</u>, 674 F.3d at 1115. An error is harmless if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." <u>Brown-Hunter</u>, 806 F.3d at 492 (citation omitted).

### III.

### DISCUSSION

The parties present three disputed issues (Jt. Stip. at 2):

<u>Issue No. 1</u>: Whether the ALJ properly evaluated the medical opinion evidence;

<u>Issue No. 2</u>: Whether the ALJ properly evaluated Plaintiff's subjective symptoms; and

<u>Issue No. 3</u>: Whether the ALJ properly determined Plaintiff's RFC.[1]

### A.   Medical opinions

In deciding how to resolve conflicts between medical opinions, the ALJ must consider that there are three types of physicians who may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff. <u>See</u> 20 C.F.R. § 404.1527(c); <u>Lester v. Chater</u>, 81 F.3d

---

[1] In its entirety, this issue is framed as whether the ALJ properly determined Plaintiff's RFC and "[a]bility to [p]erform her [sic] [p]ast [r]elevant [w]ork." (Jt. Stip. at 2.) Because the ALJ did not determine Plaintiff could perform his past relevant work and this issue is not discussed further in the Joint Stipulation, the Court assumes this additional contention was a mistake.

4

821, 830 (9th Cir. 1996) (as amended). A treating physician's opinions are entitled to greater weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Id. "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Id. For instance, "[t]he ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). To reject the uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). Where the treating physician's opinion is contradicted by another physician's opinion, the "ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. Widmark v. Barnhart, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006) (citing Lester, 81 F.3d at 831); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999).

　　1.　Dr. Hung

　　Dr. Calvin Hung, M.D. ("Dr. Hung") began treating Plaintiff around April 2010. (AR 424.) On March 11, 2013, Dr. Hung completed a medical source statement form (AR 440-41), wherein he concluded that Plaintiff could lift and/or carry ten pounds occasionally and less than ten pounds frequently; stand and/or walk at least two hours in an eight hour workday; sit six hours in an eight hour workday; Plaintiff would need to alternate standing and sitting;

5

could never climb, stoop, kneel, crouch, or crawl; occasionally balance; handle, finger, and feel constantly and reach frequently with his right hand; and never reach, handle, or finger and occasionally feel with his left hand. (AR 440-41.) In support of these findings, Dr. Hung cited to Plaintiff's decreased range of motion and function with the left upper extremity, pain, and numbness. (Id.) Dr. Hung further restricted Plaintiff from heights and moving machinery. (AR 441.) He indicated that Plaintiff's prognosis was poor. (Id.)

The ALJ gave little weight to Dr. Hung's assessments, finding that "the probative value of this evidence [was] undermined by a lack of contemporaneous treatment records upon which the opinion purports to be based or any other medical records." (AR 25.) The ALJ noted that Dr. Hung's treatment records from 2013 primarily reflected routine visits for blood pressure monitoring and lab work and did not reflect the sort of physical abnormalities one would expect if Plaintiff was as limited as assessed. (AR 25-26.) The ALJ further indicated that Dr. Hung's opinion was diminished by the fact that the assessed limitations were "so extreme as to appear implausible, given the evidence in this case." (AR 26.) For instance, Dr. Hung concluded that Plaintiff could never perform postural activities and could never reach, handle, or finger with the left upper extremity. The ALJ found that there was no support in the record for these limitations. (Id.) The ALJ additionally explained that, unlike the medical expert, Dr. Alpern, Dr. Hung lacked disability program knowledge and did not have an opportunity to review all of the medical evidence through the date last insured. (Id.) Finally, the ALJ found that the limitations assessed by Dr. Hung departed significantly from those assessed by the physicians involved in Plaintiff's workers' compensation claim, specifically, Dr. Benjamin Broukhim, M.D. ("Dr. Broukhim") and Dr. Roger Sohn, M.D. ("Dr. Sohn"). The ALJ explained that the relative probative value of these opinions was diminished by remoteness, but noted

6

that they were essentially consistent with the conclusions reached in the decision. The ALJ noted that Dr. Broukhim released Plaintiff in May 2009 – the month of his shoulder injury – to modified duties with no lifting greater than ten pounds. Following shoulder surgery, Dr. Broukhim assessed limitations similar to those of Dr. Alpern, including no lifting in excess of thirty pounds, no repetitive work above shoulder level, and no power grasping or holding. (Id.) Dr. Sohn opined that Plaintiff was limited to no heavy work and no work at or above shoulder level as to the left shoulder and limited to no very forceful activities as to the left hand. (Id.)

An ALJ is permitted to reject a treating physician's opinion that is unsupported by the record as a whole. Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Shavin v. Comm'r of Soc. Sec. Admin., 488 F. App'x 223, 224 (9th Cir. 2012) (ALJ may reject physician's opinion by "noting legitimate inconsistencies and ambiguities in the doctor's analysis or conflicting lab test results, reports, or testimony" (internal citation omitted)). As the ALJ specifically noted, Dr. Hung's assessments were not supported by his contemporaneous treatment records. The treatment note for March 11, 2013 – the same date the medical source statement was completed – reflected that Plaintiff was being seen for follow up on his blood pressure and to complete a social security form, presumably referring to the medical source statement. (AR 401.) At that time, Dr. Hung noted that Plaintiff's left shoulder and neck pain were stable. (Id.) Although Dr. Hung reported limited range of motion with limiting factors of pain and decreased strength in his left shoulder, his findings with respect to the right shoulder were normal. Despite limited range of motion in the left shoulder and normal range of motion and strength on the right shoulder, Dr. Hung concluded in the medical source statement that Plaintiff could only lift and/or carry ten pounds occasionally and less than ten pounds frequently. (AR 402-

7

403, 440.) Dr. Hung noted left wrist strength was decreased, but did not indicate that Plaintiff essentially lost all use his left hand except for occasional feeling, as assessed in his medical source statement. (Compare AR 403 (left wrist strength decreased) with 441 (Plaintiff could never reach, handle, or finger and occasionally feel with his left hand).)[2] Dr. Hung's progress note from December 2012 is similar. At that time, Plaintiff primarily visited him for follow on his lab work. (AR 404.) Plaintiff reported that the tingling and arm pain was better and his prescription for Gabapentin was helping with the pain. (Id.) Dr. Hung noted limited range of motion with the left shoulder with limiting factors of pain, and decreased left wrist strength. (AR 405.) Plaintiff was advised to do range of motion exercises. (AR 406.)

As noted, the ALJ also indicated that Dr. Hung's assessed limitations with respect to postural activities were unsupported by the record. (AR 26.) Dr. Hung indicated that Plaintiff could never climb, stoop, kneel, crouch, or crawl. (AR 441.) Plaintiff argues that Dr. Hung was "not stating he [could not] do any of these activities ever, just not on a regular basis in a given workday." (Jt. Stip. at 4.) The Court finds this argument unpersuasive. Regardless of whether Dr. Hung was evaluating an eight hour workday or longer, the contemporaneous treatment records do not show that Plaintiff was precluded from these activities.

The ALJ also found that unlike Dr. Alpern, Dr. Hung lacked disability program knowledge and did not have an opportunity to review all of the

---

[2] To the extent Plaintiff contends that despite the ALJ's specific finding that Dr. Hung's opinion was not supported by the "contemporaneous treatment records," the Court is not permitted to review the actual inconsistent assessments themselves because "this [was] not a reason cited by the ALJ in rejecting the doctor's opinion" (Jt. Stip. at 17), the Court disagrees. The ALJ expressly cited Dr. Hung's findings regarding lifting, postural limitations, reach, handling, and fingering with the left upper extremity. (AR 25-26.)

medical evidence through the date last insured. (AR 26.) See also 20 C.F.R. § 404.1527(c)(6) (listing "the amount of understanding of our disability programs and their evidentiary requirements that a medical source has" and "the extent to which a medical source is familiar with the other information in your case record" as relevant factors when considering how much weight to give a medical opinion). The ALJ also concluded that the limitations assessed by Dr. Hung conflicted with the findings of the workers' compensation physicians, Drs. Broukhim and Sohn. (AR 26.) Again, these findings are supported by substantial evidence in the record. The ALJ gave great weight to the opinion provided by Dr. Alpern, who had the opportunity to review all of the medical evidence through the date last insured. (AR 25.) Dr. Alpern found that Plaintiff could lift twenty pounds occasionally, ten pound frequently; stand and/or walk four out of eight hours; sit six out of eight hours; no left overhead; occasionally push and pull with his left upper extremity; occasionally gross grasp with the left hand; no fine restriction; and no ropes or ladders. (AR 45.) In June 2010, Dr. Broukhim restricted Plaintiff to no lifting greater than thirty pounds with his left shoulder, no repetitive work at above shoulder level, and no repetitive power grasping or holding with the left wrist. (AR 362.) A month later, Dr. Sohn limited Plaintiff to no "heavy" work with respect to the left shoulder; no work at or above shoulder level; and no very forceful activities with the left hand. (AR 551.) Because Dr. Broukhim treated Plaintiff and Dr. Sohn examined Plaintiff, their opinions constitute substantial evidence for the ALJ's rejection of Dr. Hung's opinion. See Tonapetyan, 242 F.3d at 1149; Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

Plaintiff briefly argues that the state agency physicians' opinions provided further support for Dr. Hung's opinion, but the ALJ "failed to provide a rationale of the weight given to the State Agency physicians." (Jt. Stip. at 5.) In particular, Plaintiff refers to assessed limitations to occasional

fingering with the left hand, and occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. (Id.) Contrary to Plaintiff's contention, the ALJ expressly discussed the opinion of state agency medical consultant Dr. H.M. Estrin, M.D., finding that it was consistent with Dr. Alpern's opinion and that with respect to the variances, the ALJ gave Dr. Alpern's opinion greater weight because relatively little evidence was available at the time of Dr. Estrin's evidentiary review. (AR 25.) Although the ALJ did not separately discuss the opinion of the other state agency medical consultant, Dr. C. Scott, M.D. ("Dr. Scott"), any error in failing to explain the weight given to this state agency consultant's findings was harmless. The ALJ noted that it carefully considered "all the evidence." (AR 17.) Dr. Scott's assessed postural limitations were less restrictive than those provided by Dr. Estrin and the same with respect to fine manipulation, (compare AR 83 with AR 98-99), and as explained, the ALJ gave greater weight to Dr. Alpern's opinion over Dr. Estrin's because "relatively little evidence" was available at the time of Dr. Estrin's December 2013 evidentiary review. (AR 25.) Plaintiff does not challenge this finding. When Dr. Scott rendered his opinion in April 2013, the medical evidence available for review was even more limited. (See AR 111.) As such, a failure to address Dr. Scott's opinion would not have altered the outcome. See Molina, 674 F.3d at 1115; Chislock v. Astrue, 2010 WL 2787955, at *10 (C.D. Cal. July 14, 2010) (concluding that any error in failing to explain the weight given to the state agency findings was harmless).

Finally, Plaintiff contends that the ALJ should have recontacted doctors if she had a question as to the completeness of the record or it did not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. (Jt. Stip. at 4-5, 20-21.) Plaintiff principally relies on language in Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *6 which states:

Because treating source evidence (including opinion evidence) is

10

important, if the evidence does not support a treating sources opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion. However, "[a]n ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination." Bayliss, 427 F.3d at 1217; Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) ("The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous."). Here, the ALJ never stated that Dr. Hung's opinion was ambiguous or insufficient to make a disability determination; rather, the ALJ discounted it because it was contradicted by the record. A conflict between the medical opinions does not mean that there is ambiguous evidence that triggers a duty to develop the record further. See Freeman v. Colvin, 2016 WL 6123538, at *1 (9th Cir. Oct. 20, 2016) ("conflict between medical opinions alone does not render evidence ambiguous"). Where the physician's reports are neither ambiguous nor insufficient to make a disability determination, the ALJ is not required to recontact the treating physicians before finding a claimant not disabled. See Thornsberry v. Colvin, 552 F. App'x 691, 692 (9th Cir. 2014).

Here, the ALJ provided specific and legitimate reasons supported by substantial evidence for according Dr. Hung's opinion little weight, including the opinions of treating and examining physicians. Even if there are two rational interpretations of the evidence, the ALJ's decision must be upheld. See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) ("Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld."). The record before the ALJ was neither ambiguous

nor inadequate to allow for proper evaluation of the evidence. The ALJ had no duty to further develop the record. See Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001) (finding no duty to develop record where there was substantial evidence supporting the ALJ's decision that the plaintiff was not disabled).

The Court finds that the ALJ did not err in rejecting Dr. Hung's opinion.

2.    Dr. Broukhim's recommendation regarding medication side effects

Plaintiff also contends that the ALJ erred in evaluating Dr. Broukhim's finding that he should remain off work if he is on pain medication and muscle relaxers. (Jt. Stip. at 5.) Plaintiff argues that the ALJ found no cognitive impairment, but treating and examining physicians[3] noted the effects of his medication caused difficulty with his cognitive functioning. (Id. at 4.)[4]

On September 14, 2009, Dr. Broukhim conducted an interim workers' compensation examination, and noted that he was awaiting authorization for left shoulder arthroscopic surgery. (AR 389.) He released Plaintiff to modified duties with no lifting greater than ten pounds and noted, "[o]bviously if he is taking the pain medication and muscle relaxers he should be off work." (AR 390.) Later that month, Dr. Broukhim conducted another interim workers' compensation examination and recommended an updated MRI arthrogram of the left shoulder. (AR 387.) Dr. Broukhim noted that Plaintiff was apparently sent home from work "since he was taking medication and he [was] not

---

[3] Although Plaintiff refers to treating and examining *physicians*, he only specifically discusses Dr. Broukhim's finding.

[4] The Commissioner spends several pages arguing that Plaintiff did not have any medically determinable mental impairment. However, as framed by Plaintiff, the issue is limited to Dr. Broukhim's opinion regarding the pain medication and muscle relaxers. (Jt. Stip. at 5, 22 ("To Issue No. 1, Plaintiff's contention is that Dr. Broukhim's opinion that he could not work while on pain medication and muscle relaxers was improperly rejected as it was not even considered.").) The Court addresses the disputed issue accordingly.

allowed in the workplace due to the usage of heavy equipment." (Id.) Accordingly, Dr. Broukhim recommended that Plaintiff "remain off work due to his intake of medications and pending surgical intervention to his left shoulder." (Id.) In November 2009, Dr. Broukhim similarly noted that Plaintiff was apparently sent home from work "since he was taking medication and he [was] not allowed in the workplace due to the usage of heavy equipment." (AR 386.) Therefore, Plaintiff would "remain off work due to his intake of medications and pending surgical intervention to his left shoulder." (Id.) After being released to return to work following surgery in January 2010, Dr. Broukhim's work status recommendations did not include any work restrictions based medication use. (See, e.g., AR 362 (6/3/10), 367 (4/22/10).)

The ALJ noted that although Plaintiff testified that he has limited cognitive function, i.e., "problems with memory and concentration," Dr. Griffin opined that the evidence in this case did not establish any medically determinable mental impairment. (AR 20.) The ALJ gave great weight to Dr. Griffin's opinion in light of his medical training; his knowledge of the disability program; the fact that he had an opportunity to review all of the relevant medical evidence; a state agency psychological consultant reached the same conclusion; and was fully consistent with Plaintiff's accomplishments, valid driver's license, and activities of daily living. (AR 20-21.)

With respect to side effects from Plaintiff's medication, the ALJ found that Plaintiff reported no side effects from his medication regimen, which the ALJ found "casts doubt on his testimony in this regard, which was again inconsistent." (AR 24.) Further, the ALJ noted that a review of the medical records failed to reveal any evidence corroborating Plaintiff's allegations of significantly limited cognitive function secondary to medication use. (Id.) In 2012, Plaintiff reported that his medication helped his pain and generally made his condition better. In 2014 and 2015, Plaintiff consistently exhibited an

entirely normal mental status and did not mention adverse medication side effects. (Id.)

The ALJ's findings were supported by substantial evidence. During the administrative hearing, Plaintiff's attorney asked Dr. Griffin whether the pain medication Plaintiff was taking would "cause cognitive limitations, or [was] that consistent with cognitive limitations?" (AR 60.) Dr. Griffin responded that typically an individual's "mentation adjusts to the medication. No. It might perhaps initially, but not substantially over time. [¶] Difficulty in concentrating identified in the record is likely secondary to [Plaintiff's] report of chronic pain." (Id.) This assessment is consistent with Dr. Broukhim's recommendation that Plaintiff remain off work while taking medication. Dr. Broukhim's recommendations were made shortly after Plaintiff's shoulder injury – within the first six months – when Plaintiff first began treatment with pain medication. Notably, Dr. Broukhim's later reports do not reflect any such restriction. Plaintiff does not refer to any other medical opinions finding that his pain medication would cause any lasting cognitive impairment.

Further, as the ALJ noted, Plaintiff has not reported any side effects from his medication regimen. (AR 24.) Plaintiff did not report any adverse medication side effects in recent office visits. (See, e.g., AR 576, 581, 586, 591, 596, 601, 606, 611, 617, 622.) Similarly, Plaintiff did not report any medication side effects in his most recent pain management assessments, (see AR 630 (6/19/15 reported that taking Percocet allowed him limited function), 632 (10/28/14 reported that taking Oxycontin helped manage pain and let him have his life back a little), 660 (9/15/15 reported that taking Percocet allowed him limited function), 662 (8/14/15 reported that taking Percocet was the only thing that relieved his pain), 664 (6/10/15 reported that taking an unidentified opioid worked to decrease his pain), 666 (3/20/15 reported that taking Percocet allowed him limited function), 668 (4/21/15 reported the same), 670

14

(5/19/15 reported the same), 672 (2/23/15 reported the same), 674 (1/23/15 no results noted), 676 (12/29/14 reported that taking Percocet allowed him to function and "live [his] life"), and indicated to Dr. Hung that he was "[d]oing well on Perco[c]et" and denied any adverse drug reactions. (AR 581.) See Lester, 81 F.3d at 832 ("medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition" (citation omitted)). The Court agrees with the ALJ that a review of the medical records fails to reveal any evidence corroborating Plaintiff's allegations of significantly limited cognitive function as a result of medication use. The only references the Court has found where Plaintiff reported to his treating physicians that he was experiencing adverse side effects from medication was in April 2012 and October 2014. In April 2012, Plaintiff reported that he could not tolerate Amlodipine and it was discontinued. (AR 410-11.) In October 2014, Plaintiff reported that he was mobile with Percocet and could function, but noted that taking Gabapentin more than 300 mg three times a day made him more withdrawn.[5] (AR 627.) Plaintiff, however, did not report any cognitive impairment from the medication, and in any event, Plaintiff's prescription for Gabapentin was limited to 300 mg three times a day. (See, e.g., AR 613, 621, 624, 626.) Substantial evidence supports the ALJ's findings as to a cognitive impairment based on effects of Plaintiff's medication.

**B.    Plaintiff's subjective symptom testimony**

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must

---

[5] The Court notes that the ALJ found Plaintiff remained capable of doing other work existing in significant numbers even assuming an additional limitation to only brief and casual contact with others in the workplace. (AR 21, 27.)

provide "'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004); <u>see also</u> 20 C.F.R. § 404.1529(a). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." <u>Moisa</u>, 367 F.3d at 885 (citation omitted). However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. See <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).[6]

On March 11, 2013, Plaintiff completed a function report, stating that his medical conditions restrict his ability to perform his past work because he has such pain in his left arm after a short period of time, it takes him one to two days to recover. (AR 234-42.) He cannot type or write reports because of his dyslexia and inability to do math. (AR 234.) He reported trouble lifting, standing, reaching, walking, sitting, using his hands, completing tasks, concentrating, and understanding. (AR 239.) He indicated that he cannot lift

---

[6] After the ALJ's decision, SSR 16-3p went into effect. <u>See</u> SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." <u>Id.</u> Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. <u>Id.</u>; <u>see also</u> <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10.

16

much of anything with his left arm, and cannot sit or stand without shifting. (Id.) He can walk for twenty minutes before needing to rest, and must then rest approximately two hours before he can resume walking. (Id.) He does not handle stress or changes in routine well. (AR 240.) His medications make him drowsy, unable to focus, and reduce his creativity. (AR 241.)[7]

Plaintiff stated in the function report that he wakes up in the morning and his wife gives him his medication and breakfast. He sometimes drives his children to school. He spends the rest of the day sitting. (AR 235.) He has difficulty sleeping because of pain in his neck, shoulder, and left arm. (Id.) He has difficulty bathing because of his left arm. (Id.) He needs reminders to take care of his personal needs, grooming, and to take his medications. (AR 236.) He does not prepare his own meals or do household chores because of the pain. (AR 236-37.) He does not pay bills, handle a savings account, or use a checkbook/money orders because he is dyslexic. (AR 237.) He watches television, but noted that he used to have many different, fun hobbies and an active life. (AR 238-39.) He no longer has a social life or hobbies. (AR 241.)

During the administrative hearing, Plaintiff testified that in a typical day he sits at home and does not do much. (AR 41.) He wakes up, takes his medication and has breakfast, and then usually goes back to bed until noon. He then has lunch, takes his medication, and visits with his family. He sometimes stays up until dinner and then typically sits in his chair for an hour or two before bedtime. (AR 42.) Plaintiff testified that he watches probably three to four hours of television per day and tries to read. (AR 68.) He does not sleep well and does not feel rested in the morning. (AR 63-64.) It varies how

---

[7] In his disability appeal, Plaintiff noted that he was taking a different medication that caused similar effects: loss of concentration, drowsiness, and loss of fine motor skills. (AR 276.)

often he sleeps during the day, but generally he takes two naps during the day, occasionally three. (AR 64.) He indicated that he is awake for two to six hours, maybe eight hours, during the day. (AR 65.) He spends the majority of his time in a recliner. (AR 65.) If he was sitting in a regular chair, he estimated he would need to change positions after five to ten minutes and could sit for twenty minutes to thirty minutes before needing to stand up or lay down. (AR 66.) Plaintiff reported that if he spent the day sitting in a chair like the one at the hearing, he would probably need to spend two days "virtually immobile." (Id.) Plaintiff indicated that on a good day, he probably could stand for around an hour and fifteen minutes on a bad day. (AR 64-65.) He then would lie down in a reclined position. (AR 65.) He drives to pick up his son from school once every two weeks. (AR 41.) He also indicated that he drove to the hearing and drives to doctors' appointments. (Id.) He does not exercise and does not take care of many of his personal needs. (AR 42-43.) He testified that he cannot work because of the limitations from his injuries and a few learning disabilities. (Id.) He testified that he experiences neck and left shoulder pain, which runs down his back "a little bit" and his left arm to his fingertips. (AR 63.) He reported that the pain alternates between feeling like ants, pin pricks, and "different sensations like that." (AR 63.) He explained that he has problems grasping things with his left hand and drops things. (AR 44.) He also stated that, as a result of his hypertension, he gives the wrong information. (AR 63.) He testified that he experiences memory loss and has trouble concentrating. (AR 67-68.)

The ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but his "statements concerning the intensity, persistence and limiting effects of these symptoms rising to the level of disability [were] not reliable for the reasons explained in this decision." (AR 23.) The ALJ discounted Plaintiff's subjective

18

symptom testimony for the following reasons: (1) lack of objective medical evidence supporting his subjective statements; (2) inconsistent statements; (3) alleged symptoms and limitations at odds with his reported activities; and (4) his course of treatment failed to enhance his allegations of ongoing, disabling symptoms. (AR 23-25.)

As an initial matter, the parties agree that the ALJ improperly discounted Plaintiff's subjective symptom testimony based on his course of treatment. (See Jt. Stip. at 25, 30.)

The ALJ also discounted Plaintiff's subjective symptom testimony because the objective medical evidence did not support his allegations of disabling limitations. (AR 23.) Although a lack of objective medical evidence cannot be the sole reason for rejecting a claimant's testimony, it can be one of several factors used in evaluating the credibility of Plaintiff's subjective complaints. See Rollins, 261 F.3d at 857. The ALJ noted that in June 2010, Dr. Broukhim indicated that Plaintiff's surgical scar had healed, but that there was some residual tenderness at the subacromial region and some limitation in left shoulder of motion. (AR 23, 357.) The ALJ noted, however, that impingement sign was negative and, despite signs of left carpal tunnel syndrome, Plaintiff's grip strength remained relatively good. (AR 23, 357-58.) The ALJ noted that after settling his workers' compensation claim in 2011, Plaintiff sought treatment with Dr. Hung. However, the records revealed that Plaintiff's visits primarily focused on blood pressure management and showed "a relative paucity of findings" regarding Plaintiff's musculoskeletal condition(s). (AR 23; see, e.g., AR 401-02 (follow up on blood pressure and request for Dr. Hung to complete social security form; mild pain with motion on musculoskeletal examination), 404-06 (follow up on lab work; tingling and arm pain better; cervical spine evaluation reflected active pain free range of motion; recommendation for range of motion exercises), 410 (follow up on

blood pressure), 413-15 (physical examination, musculoskeletal examination revealed normal range of motion, muscle strength, and stability in all extremities with no pain on inspection), 467 (follow up for blood pressure and lab work, dizziness with ear pain, and "chronic conditions," described as "[p]ertinent negatives include weight gain and weight loss. Hypertension (onset 7/21/2010; Controlled.) Obesity (onset 07/21/2010; Stable.) Type II diabetes mellitus, uncontrolled").) Plaintiff's October 2014 shoulder MRI revealed only postsurgical changes to the AC joint and no other abnormalities except minimal supraspinatus tendinosis. (AR 23, 562.) Further, as the ALJ indicated, recent treatment notes revealed that Plaintiff had full strength in the right upper extremity and only mildly reduced strength in the left upper extremity. (AR 23, 691.) Despite Plaintiff's allegations of difficulty standing and walking, he exhibited a normal gait; was able to walk on heels and toes; tandem was normal; and an examination of his lower extremities revealed no abnormalities. (Id.) And despite alleged cognitive deficits, Dr. Mark Liker, M.D. described Plaintiff as alert and fully oriented; noted his comprehension was intact; and memory, attention, and concentration were normal. (Id.) This evidence was substantial and reasonably supported the ALJ's conclusion that Plaintiff's symptoms and limitations were inconsistent with the objective medical evidence. Accordingly, the ALJ properly relied on a lack of objective evidence to discount Plaintiff's subjective symptom testimony.

Next, the ALJ discounted Plaintiff's subjective symptom testimony because of inconsistent statements made by Plaintiff. In particular, the ALJ noted that at the hearing, Plaintiff initially stated that he could not stand, but then indicated that he could stand for fifteen minutes to an hour. (AR 23-25.) Further, although he initially testified that he did not do anything during a typical day, he later acknowledged that he picked up his children as needed, enjoyed watching science programs, and read about firearms. (AR 25.) The

ALJ explained that, "[w]hile not necessarily reflecting a conscious intention to mislead, nevertheless such inconsistencies further indicate that the information reported cannot be used as a reliable source for assessing disability." (Id.)

The ALJ also cited inconsistencies between Plaintiff's allegations of pain and his documented reports in the clinical context. (AR 24.) The ALJ noted that despite allegations of disabling pain, Plaintiff reportedly told Dr. Sohn that his left shoulder pain was generally mild and only intermittently moderate; and that his left hand pain was only occasional and minimal. (Id.) Similarly, when Plaintiff recently met with a pain management physician, he endorsed generally mild pain – three out of ten in severity with medication. (Id.) Further, as previously noted, Plaintiff did not report any side effects from his medication regimen, which cast doubt on his testimony in that regard. (Id.) The ALJ noted that in 2012, Plaintiff reported that his medication helped his pain and generally made his condition better. In 2014 and 2015, Plaintiff consistently exhibited an entirely normal mental status and made no mention of any adverse medication side effects. (Id.)

The ALJ's determination that Plaintiff's allegations of disabling pain were inconsistent with his statements to his treating and examining physicians was supported by substantial evidence. See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (the ALJ may consider prior inconsistent statements concerning symptoms in assessing credibility); see also Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) ("If a claimant . . . has made prior statements inconsistent with his claim of pain, or is found to have been less than candid in other aspects of his testimony, that may be properly taken into account in determining whether or not his claim of disabling pain should be believed."). As explained, Plaintiff reported in the function report that his medical conditions restrict his ability to perform his past work because of left arm pain, and he has difficulty sleeping because of the pain in his neck, shoulder, and left

21

arm. (AR 234-35.) At the hearing, Plaintiff initially testified that on typical day he sits at home and does not do much (AR 41), although he later reported that he watches television three to four hours a day and tries to read. (AR 68.) He stated that he could sit for twenty to thirty minutes before needing to stand up or lay down; would probably need to spend two days "virtually immobile" after spending a day sitting in a chair like the one at the hearing; and could stand for between fifteen minutes to an hour. (AR 64-66.)

However, Dr. Sohn summarized Plaintiff's left shoulder and hand pain as follows: complaints of left shoulder pain were rated as constant and mild becoming intermittent and moderate; and complaints of left hand pain were rated as occasional and minimal. (AR 550.) The ALJ also noted that Plaintiff recently met with a pain management physician and endorsed generally mild pain – three out of ten in severity with medication. (AR 24, 637.) In the Joint Stipulation, Plaintiff argues that this same report noted that pain increased with physical activity and interfered with activities of daily living. (Jt. Stip. at 26.) But, as Plaintiff concedes, Plaintiff otherwise reported that pain medication and bed rest helped with "some pain relief." (AR 637.) Further, Plaintiff often reported similar pain levels in 2014 and 2015. (See, e.g., AR 661 (reported pain intensity as two on 9/15/15 and average pain intensity as four), 663 (8/14/15 average pain intensity three), 665 (reported pain intensity as four on 6/10/15 and average pain intensity as three), 669 (reported pain intensity as four on 4/21/15 and average pain intensity the same), 671 (reported pain intensity as two on 5/19/15 and average pain intensity as three), 673 (reported pain intensity as three on 2/23/15 and average pain intensity as three/four), 677 (reported pain intensity as three on 12/29/14 and average pain intensity as four).) Additionally, as previously discussed, Plaintiff did not report any side effects from his medication regimen. Plaintiff reported one time that an increase in his Gabapentin dosage made him more withdrawn (AR 627) and

reported in 2012 that he could not tolerate Amlodipine, at which time this medication was discontinued. (AR 410-11.)

Although Plaintiff's statements at the hearing regarding standing and daily activities were not necessarily inconsistent as the ALJ concluded, the ALJ's additional finding that Plaintiff's statements were inconsistent with his reported symptoms to his physicians constitutes a specific, clear and convincing reason supported by substantial evidence for discounting Plaintiff's subjective symptom testimony.

Finally, the ALJ concluded that Plaintiff's alleged symptoms and limitations were at odds with his reported activities during the period at issue. (AR 24.) The ALJ noted that in 2013, Plaintiff reportedly remained able to go out and travel alone, drive his children to school, walk twenty minutes at a time, and get along well with family, friends, neighbors, and others. (AR 24, 234-42.) Additionally, the treatment notes reflected that Plaintiff helped his father set up a business, a gun shop, and in so doing was attending out of state trade shows and doing a lot of walking. (AR 24, 611, 627.) The ALJ found that these activities conflicted with the degree of limitation Plaintiff described at the hearing and suggested that his actual daily activities have been somewhat greater than alleged. (AR 24.)

The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as

23

to her overall disability."). "[O]nly if [his] level of activity [was] inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [his] credibility." <u>Garrison</u>, 759 F.3d at 1016. Here, Plaintiff's reports of walking "a lot" at a trade show and "moving heavy furniture" to help his father set up a business (AR 611, 627) directly contradict many of Plaintiff's allegations, including that he cannot lift much, has trouble grasping things with his left hand, is unable to do household chores, and can only walk for twenty minutes before needing to rest for two hours. (AR 44, 236-37, 239.) Even attempting such activities is inconsistent for someone who has alleged such disabling pain. While Plaintiff's other daily activities do not necessarily detract from his credibility as to his overall disability, Plaintiff's strenuous activities helping his father do. As such, substantial evidence supports the ALJ's finding that Plaintiff's reported activities were at odds with his alleged symptoms and limitations.

Plaintiff contends that, pursuant to then-applicable SSR 96-7p, 1996 WL 374186, the ALJ should have questioned Plaintiff regarding the treatment note reflecting that he helped his father move heavy furniture. (Jt. Stip. at 34-35.) SSR 96-7p provides, "When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements." 1996 WL 374186, at *3. Here, the record was adequate to assess the credibility of Plaintiff's subjective statements such that the ALJ was not obligated to further develop the record as Plaintiff contends. The record before the ALJ contained assessments of Plaintiff's capacity to perform work-related functions and was sufficient to allow the ALJ to make an appropriate evaluation of Plaintiff's statements of pain and limitations. <u>See</u> <u>McCoy v. Astrue</u>, 648 F.3d 605, 612 (8th Cir. 2011) (the duty to develop the record "is not never-ending and an

ALJ is not required to disprove every possible impairment"). Further, Plaintiff does not identify any additional information that would have been provided in response to a question requesting clarification. Indeed, even in his request for review of the hearing decision, Plaintiff does not offer any explanation reconciling this inconsistency. (See AR 334-36.) Moreover, as to heavy lifting, the ALJ noted that the RFC conclusion was consistent with Plaintiff's testimony that he stopped working because he had to lift/carry "heavy" items and in so doing, needed good use of both hands. (AR 25.)

Where, as here, an ALJ provides legally sufficient reasons supporting his credibility determination, the ALJ's reliance on erroneous reasons is harmless "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on . . . credibility and the error does not negate the validity of the ALJ's ultimate [credibility] conclusion . . . ." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (internal quotation marks and citation omitted). Since the ALJ articulated several legally sufficient reasons supporting his adverse credibility finding, any error in relying on improper grounds was harmless. See Nava v. Colvin, 2017 WL 706099, at *5 (C.D. Cal. Feb. 21, 2017) (since history of conservative treatment and lack of corroborating medical evidence were legally sufficient reasons supporting the ALJ's credibility finding, reliance on plaintiff's daily activities was harmless).

Accordingly, reversal is not warranted based on the ALJ's credibility determination.

## C. RFC determination

Issue No. 3 essentially reargues Issue No. 1. Plaintiff argues that the ALJ erred in rejecting the opinions of Drs. Hung and Broukhim and when the vocational expert was asked to consider the additional limitations assessed by these physicians, the expert eliminated all of the work identified in the ALJ's decision. (Jt. Stip. at 37.) Plaintiff contends that hypothetical questions are

incomplete if they omit mental impairments or restrictions or if they omit symptoms and restrictions presented through competent lay testimony. According to Plaintiff, the ALJ erred in relying on the response to the hypothetical question that did not include all of Plaintiff's limitations. (Id. at 38.) Because the Court has already concluded that the ALJ provided legally sufficient reasons for rejecting Drs. Hung's and Broukhim's opinions as explained above, Plaintiff's challenge to the RFC determination lacks merit and does not provide a basis for reversal.

## IV.

## ORDER

IT THEREFORE IS ORDERED that judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: April 09, 2018

_____
JOHN D. EARLY
United States Magistrate Judge